IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KARSTEN ALLEN, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>)<br>B. WALDRON, et al., )<br>   Defendants. ) | Case No. 7:21-cv-00214<br><br><br>By: Michael F. Urbanski<br>Chief United States District Judge |

**MEMORANDUM OPINION**

Karsten Allen, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against seven individuals employed by the Virginia Department of Corrections ("VDOC"), asserting violations of his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. Six of the defendants, B. Waldron, C.S. McBride, C. Smith, T. Lowe, Kevin McCoy, and Harold Clarke, have filed a partial motion to dismiss to which Allen has responded. ECF Nos. 21 and 27. For the reasons set forth below, the court will grant the motion and dismiss the due process claims asserted against those defendants. The court will also dismiss the due process claim asserted against the seventh defendant, D.B. Owens, pursuant to 28 U.S.C. § 1915A(b)(1).

       **I.**      **Factual Background**

This action arises from events that occurred on January 27, 2021, while Allen was incarcerated at Keen Mountain Correctional Center. On that day, Allen went to morning pill call to obtain Benadryl for a rash. Compl. ¶¶ 11, 13. He took some library materials with him to return to a counselor. Id. ¶ 13. Upon seeing Allen at the counselor's door, Lieutenant C.S.

McBride asked him whether he was coming to pill call. Id. Allen explained that he was attempting to return some library materials and then approached the pill call window. Id. Although Allen had recently been prescribed Benadryl, Nurse C. Smith told him that she did not have any medication for him. Id. When Allen attempted to return to his cell, McBride and Sergeant B. Waldron approached him, and McBride "aggressively" warned him not to lie. Id. After Allen "arrogantly explained" that he had no reason to lie, "McBride became visibly angry and began shouting, 'Shut up Shup! Shut Up!'" Id. When Allen attempted to explain that the nurse may have made a mistake, McBride insisted that Allen was lying, stating as follows: "'Do not lie to me. Do you understand?'" Id. After McBride repeated the question and Allen refused to respond, Waldron referred to Allen using a racially derogatory term and threatened to "lock [Allen] up" if he refused to answer another question. Id. Allen was subsequently "taken to segregation while Sgt. Waldron continued to threaten [him] with physical assault." Id.

Later that day, Allen was served with two disciplinary offense reports. Id. ¶ 15. In the first report, McBride charged Allen with lying or giving false information to an employee. Id.; see also Compl. Ex. A, ECF No. 1-1 at 1. In the second report, Waldron charged Allen with using vulgar or insolent language toward an employee. Compl. ¶ 15; see also Compl. Ex. B, ECF No. 1-1 at 2. The disciplinary offense reports were approved by Captain D.B. Owens. Compl. ¶ 16. Allen alleges that both reports were "false" and that Waldron's report was written in retaliation for exercising his rights under the First Amendment. Id. ¶¶ 26–27.

Allen also alleges that he was denied due process in connection with the disciplinary actions, both of which resulted in the imposition of a $10.00 fine. Id. ¶¶ 21, 23; see also Compl. Exs. C and D, ECF No. 1-1 at 3–4. In particular, Allen asserts that Nurse Smith submitted a

false witness statement, that Hearing Officer T. Lowe improperly relied on evidence that Allen was not able to access, and that Lowe improperly denied Allen's request to present his "medical MAR sheet" as documentary evidence. Id. ¶¶ 28–31. Allen also complains that Lowe did not adequately explain how he concluded that Allen was guilty of both disciplinary charges. Id. ¶¶ 32–33. Additionally, Allen contends that Assistant Warden Kevin McCoy "refuse[d] to recognize the due process violations" when Allen appealed the disciplinary convictions and that VDOC Director Harold Clarke implemented disciplinary procedures that allowed the alleged due process violations to occur. Id. ¶¶ 34–36.

## II.  Procedural History

On April 16, 2021, Allen filed this action under 42 U.S.C. § 1983 against Waldron, McBride, Smith, Owens, Lowe, McCoy, and Clarke. Allen claims that each of the defendants violated his right to due process under the Fourteenth Amendment. Allen also claims that Waldron retaliated against him in violation of the First Amendment. See id. ¶¶ 26–37.

On December 17, 2021, Waldron, McBride, Smith, Lowe, McCoy, and Clarke timely filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in which they seek dismissal of the due process claims against all six defendants.[1] ECF No. 21. Allen has responded to the motion, ECF No. 27, and it is ripe for disposition.

## III.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6)

---

[1] Defendant Waldron specifically declined to seek dismissal of the First Amendment retaliation claim. See Mem. Supp. Mot. Dismiss, ECF No. 22, at 1 n.1.

3

motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

Where, as here, a complaint was filed pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, a pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

## IV. Discussion

Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983[,] a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Loftus v. Bobzien, 848 F.3d 278, 284-85 (4th Cir. 2017) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011)).

4

Waldron, McBride, Smith, Lowe, McCoy, and Clarke argue that Allen's complaint fails to state a claim for violation of his right to due process under the Fourteenth Amendment. To state a due process claim, "a plaintiff must first show that he has a constitutionally protected liberty or property interest, and that he has been deprived of that protected interest by some form of state action." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (internal quotation marks and citations omitted). Unless the plaintiff makes such showing, "the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Id.; see also Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.") (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 579 (1972)).

The due process claims asserted by Allen arise from the disciplinary proceedings initiated by Waldron and McBride. In Wolff v. McDonnell, 418 U.S. 539 (1974), "the Supreme Court recognized that constitutional due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interests—such as the loss of good time credits . . . ." Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019) (citing Wolff, 418 U.S. at 555). The Supreme Court held that an inmate charged with a disciplinary violation implicating a protected liberty interest must receive: (1) advance written notice of the charges against him; (2) an opportunity to call witnesses and present evidence unless doing so would present an undue hazard; (3) a written statement describing the evidence relied on and the reasons for the disciplinary action; and (4) a fair and impartial tribunal. Wolff, 418 U.S. at 563-71. The procedural protections afforded by Wolff apply only when a disciplinary action

5

implicates a protected constitutional interest. Sandin v. Conner, 515 U.S. 472, 483-84 (1995); see also Wolff, 418 U.S. at 571 n.19 ("We do not suggest . . . that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges.")

In Sandin v. Conner, the Supreme Court held that a prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed inflicts "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "inevitably affect[s] the duration of his sentence." 515 U.S. at 484, 487. Although Sandin specifically addressed whether an inmate's thirty-day assignment to segregated confinement implicated a protected liberty interest, id. at 485–87, some circuits have "extended the Sandin analysis to due-process claims based on property interests . . . ." Johnson v. Whitney, 723 F. App'x 587, 591 (10th Cir. 2018) (citing Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999)); see also Anderson v. Dillman, 297 Va. 191, 195, 824 S.E.2d 481, 483 (2019) ("What is true for liberty interests, some courts have held, must also be true for property interests.") (collecting federal appellate cases on both sides of the issue).[2] Likewise, several judges of this court have applied Sandin's "atypical and significant hardship" test in determining whether a monetary fine implicates a protected interest in the prison disciplinary context. See, e.g., Johnson v. Adams, No. 7:22-cv-00341, 2022 U.S. Dist. LEXIS 129587, at

---

[2] As other judges of this court have noted, "the Fourth Circuit has not yet spoken directly on this issue" in a published decision. Johnson v. Adams, No. 7:22-cv-00341, 2022 U.S. Dist. LEXIS 129587, at *6 n.2 (W.D. Va. July 21, 2022); see also Allen v. Sater, No. 7:21-cv-00230, 2022 U.S. Dist. LEXIS 127121, at *16 (W.D. Va. July 18, 2022). In an unpublished decision, however, the Fourth Circuit relied on Sandin to conclude that an inmate "did not have a constitutionally protected liberty or property interest in his prison job." Backus v. Ward, No. 98-6331, 1998 U.S. App. LEXIS 11826, at *2 (4th Cir. June 8, 1998) (citing Sandin, 515 U.S. 486–87).

*5 (W.D. Va. July 21, 2022) ("As several judges of this court have recognized, 'small monetary penalties . . . do not impose atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life and are not constitutionally protected interests under the Due Process Clause.'") (quoting Roscoe v. Mullins, No. 7:18-cv-00132, 2019 U.S. Dist. LEXIS 154091, at *10 (W.D. Va. Sept. 10, 2019)); Riddick v. Gilbert, No. 7:20-cv-00598, 2021 U.S. Dist. LEXIS 143938, at *6 (W.D. Va. Aug. 2, 2021) ("As this court has acknowledged on many occasions, small fines levied against a Virginia state prisoner do not impose [an atypical and significant] hardship and therefore do not implicate the Due Process Clause.") (collecting cases); Graham v. Stallard, No. 7:17-cv-00035, 2020 U.S. Dist. LEXIS 177366, at *53 (W.D. Va. Sept. 28, 2020) ("The $10 monetary fines imposed here were insufficient to trigger constitutional due process protections."); Joyner v. Fleming, No. 7:16-cv-00486, 2018 U.S. Dist. LEXIS 77120, at *7 (W.D. Va. May 8, 2018) ("Neither Plaintiff's stay in segregation . . . nor the $12.00 fine implicates interests protected by the Due Process Clause."); but see Mancia v. Elam, No. 7:19-cv-00625, 2021 U.S. Dist. LEXIS 172598, at *11–20 (W.D. Va. Sept. 13, 2021) (determining that the nature of property rights related to prison disciplinary fines is a "contested issue," but ultimately concluding that the defendants were entitled to qualified immunity).

    In this case, as in Johnson, Roscoe, Riddick, Graham, and Joyner, Allen was subjected only to a small monetary fine as a result of the challenged disciplinary charges. Consistent with those decisions, the court concludes that such a de minimis penalty does not constitute an atypical and significant hardship in the context of prison life and therefore does not implicate the protections afforded under the Due Process Clause. Allen's due process claims therefore

fail as a matter of law, and the court will grant the partial motion to dismiss filed by Waldron, McBride, Smith, Lowe, McCoy, and Clarke.[3] Because the only claim against Owens is subject to dismissal for the same reason, the court will dismiss the claim against him under 28 U.S.C. § 1915A(b)(1).[4] See 28 U.S.C. § 1915A(b)(1) (providing that any portion of a complaint in which a prisoner seeks redress from an officer or employee of a governmental entity shall be dismissed if it "fails to state a claim upon which relief may be granted").

## V.  Conclusion

For the reasons set forth herein, the partial motion to dismiss filed by defendants Waldron, McBride, Smith, Lowe, McCoy, and Clarke, ECF No. 21, is **GRANTED**, and the due process claims asserted against those defendants and defendant Owens are **DISMISSED** with prejudice. The case will proceed solely on Allen's claim of retaliation against defendant Waldron.

An appropriate order will be entered.

---

[3] Even if Allen's allegations were sufficient to establish that he was deprived of a constitutionally protected interest, the defendants would be entitled to qualified immunity. As the defendants explain in their brief, qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). Based on the case law summarized above, the court agrees with the defendants that it was not clearly established that a small fine triggers due process protections. Accordingly, qualified immunity bars any claim for damages against the defendants in their individual capacities for the alleged due process violations. See Mancia, 2021 U.S. Dist. LEXIS 172598, at *20 (holding that the defendants were entitled to qualified immunity since "it was not clearly established that a small, monetary fine triggers federal due process protections during prison disciplinary proceedings"); see also Allen v. Coleman, No. 7:21-cv-00241, 2022 U.S. Dist. LEXIS 54183, at *12 (W.D. Va. Mar. 25, 2022) (same).

[4] Because the claim against Owens will be dismissed under § 1915A(b)(1), the following motions will be dismissed as moot: (1) Allen's motion for default judgment against Owens, ECF No. 33; (2) Owens's untimely motion to dismiss, ECF No. 38; and (3) Owens's motion to deem his response timely filed, ECF No. 37

Entered: July 27, 2022

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2022.07.27 12:31:16 -04'00'

Michael F. Urbanski
Chief United States District Judge