IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KARSTEN O. ALLEN, | ) | |
|     Plaintiff, | ) | Case No. 7:21-cv-00214 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| B. WALDRON, | ) | Chief United States District Judge |
|     Defendant. | ) | |

## MEMORANDUM OPINION

Karsten O. Allen, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. The case is presently before the court on a motion for summary judgment filed by the remaining defendant, B. Waldron. ECF No. 45. Allen has filed a response in opposition to the motion, as well as a motion for sanctions. ECF Nos. 50 and 51. For the reasons set forth below, Waldron's motion for summary judgment is **DENIED**, and Allen's motion for sanctions is **DENIED**.[1]

## Background

This action arises from events that occurred on January 27, 2021, while Allen was incarcerated at Keen Mountain Correctional Center ("Keen Mountain"). On that day, Allen went to morning pill pass to obtain Benadryl for a rash, and he took some library materials with him to return to a counselor. Compl., ECF No. 1, at ¶¶ 11, 13. Upon seeing Allen at the counselor's door, Lieutenant McBride asked him whether he was coming to pill call. Id. ¶ 13. Allen explained that he was attempting to return some library materials and then approached

---

[1] This opinion also addresses the following non-dispositive motions: Allen's motions to supplement his response to the motion for summary judgment to include an accompanying verification, ECF Nos. 63 and 65; Allen's motion for a court order, ECF No. 49; and Allen's motion for a trial date, ECF No. 48.

the pill call window. Id. Although Allen had recently been prescribed Benadryl, the nurse told him that she did not have any medication for him. Id. When Allen attempted to return to his cell, McBride and Waldron approached him, and McBride warned him not to lie. Id. After Allen "arrogantly explained" that he had no reason to lie, McBride became visibly angry and yelled for him to "shut up." Id. When Allen attempted to explain that the nurse may have made a mistake, McBride insisted that Allen was lying. Id. Consequently, Allen declined to answer any additional questions, which further angered the officers. Id. Allen alleges that Waldron referred to him using a racially derogatory term and threatened to assault him as he was being escorted to segregation. Id.

Later that day, Allen was served with two disciplinary offense reports. Id. ¶ 15. In the first report, McBride charged Allen with lying or giving false information to an employee. Id. In the second report, Waldron charged Allen with using vulgar or insolent language toward an employee. Id. Allen alleges that both reports were false and that Waldron's report was written in retaliation for exercising his rights under the First Amendment. Id. ¶¶ 26–27. Allen also alleges that he was denied due process in connection with the disciplinary actions, both of which resulted in the imposition of a $10.00 fine. Id. ¶¶ 21, 23.

Based on the foregoing allegations, Allen filed this action under 42 U.S.C. § 1983 against Waldron and other defendants, asserting violations of his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. The defendants moved to dismiss all of Allen's claims under Federal Rule of Civil Procedure 12(b)(6), with the exception of the retaliation claim asserted against Waldron. On July 27, 2022, the court granted the motion to dismiss, leaving only the retaliation claim. See Order, ECF No. 43.

Waldron now moves for summary judgment on the basis that Allen failed to exhaust his administrative remedies. The case is before the court on Waldron's motion and Allen's motion for sanctions, both of which have been fully briefed by the parties.[2]

## Discussion

### I. Waldron's Motion for Summary Judgment

#### A. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, "[t]he court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). The court "may not weigh the evidence or make credibility determinations." Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019) (internal quotation marks and citations omitted).

#### B. Exhaustion of Administrative Remedies

Waldron has moved for summary judgment on the remaining claim of retaliation on the basis that Allen failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA").[3] The PLRA provides that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme

---

[2] Allen recently moved to supplement his response to the motion for summary judgment to include a verification certifying under penalty of perjury that the statements contained in the response are true and correct. The motions to supplement, ECF Nos. 63 and 65, will be granted.

[3] Waldron has requested leave to file a motion for summary judgment on the merits of the retaliation claim in the event that the pending motion for summary judgment is denied.

Court has held that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 532 (2002), and that "proper exhaustion" is required, which includes "compliance with an agency's deadlines and other critical procedure rules," Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Although the PLRA's exhaustion requirement is "strict," is "does not operate as an absolute bar to prison litigation in federal court." Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022). Instead, "it sets forth a built-in exception, specifying that a prisoner need not exhaust remedies if they are not available." Id. (internal quotation marks omitted) (citing Ross v. Blake, 578 U.S. 632, 635–36 (2016)). In other words, if "an administrative remedy, although officially on the books, is not capable of use to obtain relief," the exhaustion requirement "does not come into play." Ross, 578 U.S. at 643. The Supreme Court has identified three circumstances that satisfy this standard: (1) where the administrative remedy "operates as a simple dead end," with prison officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque" that it is "practically . . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44.

### 1. VDOC Grievance Procedure

VDOC Operating Procedure ("OP") 866.1, titled "Offender Grievance Procedure," is the mechanism used to resolve most complaints and grievances from inmates incarcerated in VDOC facilities. Grievable issues include matters relating to conditions of care, retaliation against an inmate for using the grievance procedure, and other actions of staff that affect an

4

inmate personally. OP 866.1(III)(B)(1), eff. January 1, 2021, Viars Aff. Encl. A, ECF No. 46-1; see also OP 866.1(VIII)(C)(2) (emphasizing that inmates may not be subject to retaliation for filing a grievance and that an inmate "may pursue a complaint of retaliation through the Offender Grievance Procedure") (italics omitted). Non-grievable issues include "[d]isciplinary hearing decisions, penalties and/or procedural errors, which may be appealed in accordance with Operating Procedure 861.1 . . . ." OP 866.1(III)(B)(1).

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally before filing a regular grievance. If a verbal complaint is not resolved to the satisfaction of an inmate, the inmate may submit a written complaint. OP 866.1(I)(D). The written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident," and the designated staff member then has 15 days to provide a response. Id. If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. A regular grievance generally must be placed in the grievance mailbox within 30 days from the date of the original incident or the discovery of the incident. Id.

If a regular grievance satisfies the intake criteria, "staff must accept the grievance and log it into VACORIS using the received date." OP 866.1(III)(C). If the grievance does not meet the intake criteria, prison officials return it to the inmate with an explanation for its rejection. Id. If an inmate disagrees with the intake decision, the inmate has five days to appeal the decision to the Regional Ombudsman. Id.

When a regular grievance is accepted and logged into VACORIS, the "Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. OP 866.1(III)(F). If an inmate is dissatisfied with the response, the inmate may appeal to Level II,

where the appeal is reviewed by the Regional Administrator or another designated official. OP 866.1(IV)(C). OP 866.1 explains that an inmate satisfies the requirements for exhausting administrative remedies only when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1(V)(B).

### 2. Allen's Exhaustion Efforts

Waldron has presented evidence indicating that Allen did not comply with all of the requirements of the Offender Grievance Procedure before pursuing his remaining claim of retaliation. To support the motion for summary judgment, Waldron submitted an affidavit executed by the Institutional Ombudsman at Keen Mountain, H. Viars. Waldron also submitted a supplemental affidavit executed by Viars. The affidavits state that "Allen has not had a regular grievance accepted for intake and processed through the required levels of appeal regarding his claim [that Waldron retaliated against him for exercising his right to free speech by falsely charging him with a disciplinary offense on January 27, 2021]." Viars Supp'l Aff., ECF No. 54-1, at ¶¶ 3, 7; see also Viars Aff., ECF No. 46-1, at ¶ 12 (stating that Allen "did not pursue this claim through the Offender Grievance Procedure before filing litigation"). Although Allen filed a regular grievance complaining that investigators had refused to investigate alleged threats of violence and retaliation by Waldron and another officer, that grievance was not signed until April 20, 2021, well outside the 30-day time period set forth in OP 866.1. See Viars Supp'l Aff. Encl. A, ECF No. 54-1.

In response to Waldron's motion for summary judgment, Allen does not dispute whether he submitted a timely regular grievance alleging that Waldron falsely charged him with a disciplinary offense on January 27, 2021, as an act of retaliation. Instead, he argues that there are genuine issues of material fact as to whether the Offender Grievance Procedure was

actually available to inmates who wished to challenge retaliatory disciplinary charges or whether he was misled to believe that such challenges should be raised in a disciplinary appeal under OP 861.1. Having reviewed the record, the court agrees.

As indicated above, the Offender Grievance Procedure specifically identifies retaliation as a grievable issue. According to Allen's verified response in opposition, however, prison officials at Keen Mountain and other VDOC facilities have interpreted the grievance policy's list of non-grievable issues to include <u>any</u> claims related to disciplinary actions, including the alleged submission of a false or retaliatory report. <u>See</u> Pl.'s Resp. Opp'n, ECF No. 51-1, at 5. This assertion is supported by documents suggesting that allegations of false or retaliatory disciplinary reports may be raised in the disciplinary appeal process rather than the grievance process. For instance, in December 2020, Allen filed an informal complaint regarding an unrelated disciplinary charge in which he alleged that information had been falsified by an officer. In response, a prison official advised him that "[a]<u>ny</u> issues" regarding the disciplinary charge may be addressed in his disciplinary appeal. Pl.'s Ex. B, ECF No. 51-2, at 2 (emphasis added). Similarly, on March 4, 2021, Allen filed a written complaint alleging that a disciplinary report submitted by another officer had been falsified in retaliation for filing an emergency grievance. In response, a unit manager wrote that "[i]ssues regarding infractions should be appealed in accordance [with] OP 861.1," which sets forth the procedure for disciplinary appeals.[4] Pl.'s Ex. A, ECF No. 51-2, at 1. Consistent with the advice provided by prison officials, Allen raised the allegation of retaliation in his appeal from the disciplinary action

---

[4] Portions of the unit manager's handwritten response, including the referenced operating procedure, are difficult to read. At this stage of the proceedings, however, the court must construe the evidence in the light most favorable to Allen. <u>Shaw</u>, 59 F.4th at 129.

7

instituted by Waldron, and the assistant warden rejected the retaliation claim on the basis that there was insufficient evidence to support it. Pl.'s Ex. F, ECF No. 51-2, at 6. The assistant warden's response to the disciplinary appeal provided no indication that the claim of retaliation must be grieved separately under OP 866.1.

Based on the foregoing, the court concludes that there are disputes of fact as to whether the Offender Grievance Procedure was actually available to inmates who wished to pursue a retaliation claim related to a disciplinary action or whether Allen was misled to believe that such claims should be raised in an appeal from a disciplinary action under OP 861.1. Given these factual disputes, Waldron is not entitled to summary judgment on the issue of exhaustion. See, e.g., Ofori v. Fleming, No. 7:20-cv-00345, 2022 WL 791645, at *11 (W.D. Va. Mar. 11, 2022) (partially denying summary judgment on exhaustion where there was conflicting evidence in the record as to whether an inmate was misled to believe that claims of retaliatory disciplinary actions were not grievable under the Offender Grievance Procedure but should instead be raised during the disciplinary proceedings). Accordingly, the pending motion for summary judgment will be denied, and Waldron will be given thirty days to file any motion for summary judgment addressing the merits of Allen's retaliation claim.[5]

---

[5] As previously noted, Waldron requested leave to file a motion for summary judgment on the merits of the retaliation claim in the event that the court denies summary judgment on the issue of exhaustion. In response to that request, Allen filed a motion for a court order precluding Waldron from filing another motion for summary judgment. ECF No. 49. He also filed a motion to set the case for trial on the retaliation claim. ECF No. 48. Contrary to Allen's assertions, it is not uncommon for proceedings on the merits of a claim to be deferred until the issue of exhaustion is decided. See, e.g., Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008) ("We emphasize that in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved."). Consequently, Allen's motion for a court order precluding Waldron from filing another motion for summary judgment will be denied, and his motion to set the case for trial will be denied as premature.

II.     **Motion for Sanctions**

In response to Waldron's motion for summary judgment, Allen moved to sanction Viars and defense counsel under Rule 56(h) on the basis that Viars's original affidavit falsely states that Allen "did not submit a regular grievance concerning retaliation committed by defendant Waldron." Mot. Sanctions, ECF No. 50, at 2. Allen argues that the original affidavit was submitted in bad faith and that exhibits accompanying the motion for sanctions establish that he did, in fact, submit a regular grievance complaining of retaliation.

Rule 56(h) permits a district court to sanction a party or an attorney if an affidavit or declaration filed in connection with a motion for summary judgment "is submitted in bad faith or solely for delay." Fed. R. Civ. P. 56(h). "Awarding sanctions under Rule 56(h) is rare, and the conduct involved generally must be egregious." Williams v. Trujillo, No. 2:18-cv-03239, 2022 WL 1154800, at *3 (D. Ariz. Apr. 19, 2022) (internal quotation marks and citation omitted). For instance, courts have found bad faith "where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case." Stern v. Regency Towers, LLC, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Here, there is no evidence that Viars or defense counsel engaged in misconduct, much less the level of misconduct that would give rise to sanctions under Rule 56(h). Viars's original affidavit states that she reviewed Allen's grievances to determine whether he exhausted his administrative remedies and that, based on her review, "Allen has not submitted any regular grievances concerning his claim that Sergeant Waldron retaliated against him by filing a false disciplinary charge because . . . Allen exercised his First Amendment rights." Viars Aff., ECF No. 46-1, at ¶ 12. This statement is not clearly contradicted by the regular grievance submitted

9

in April 2021 or any other evidence in the record. As indicated above, the April 2021 grievance complained that investigators had refused to investigate alleged threats of assault and retaliation by Waldron and another officer. The grievance did not mention the disciplinary offense report submitted by Waldron in January 2021 or Allen's belief that the report was written in retaliation for exercising his First Amendment rights. Thus, it does not blatantly contradict Viars's original affidavit or support a finding of bad faith on the part of Viars or defense counsel. Because Allen has not shown that the original affidavit was "submitted in bad faith or solely for delay," his motion for sanctions under Rule 56(h) will be denied.

## Conclusion

For the reasons stated, Waldron's motion for summary judgment on the remaining claim of retaliation, ECF No. 45, is **DENIED**, and Allen's motion for sanctions, ECF No. 50, is **DENIED**. An appropriate order will be entered.

Entered: August 2, 2023

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2023.08.02 17:50:24 -04'00'

Michael F. Urbanski
Chief United States District Judge