CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
December 18, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **KARSTEN O. ALLEN,** ) | |
| Plaintiff, ) | Case No. 7:21-cv-00214 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **B. WALDRON,** ) | Senior United States District Judge |
| Defendant. ) | |

## MEMORANDUM OPINION

Karsten O. Allen, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. The case proceeded to a jury trial on Allen's claim that the remaining defendant, B. Waldron, unlawfully retaliated against Allen for engaging in conduct protected by the First Amendment. On February 26, 2025, the jury returned a verdict in favor of Waldron. Presently before the court is Allen's motion for a new trial. ECF No. 144. For the reasons set forth below, the motion is **DENIED**.

### I. Background

This action arises from events that occurred on the morning of January 27, 2021, while Allen was incarcerated at Keen Mountain Correctional Center. On that day, Allen encountered Waldron and another correctional officer, C. McBride, who were monitoring pill call. McBride asked Allen if he was supposed to be at pill call, and Allen responded in the affirmative. However, when Allen approached C. Smith, the registered nurse conducting pill call, Smith indicated that she had no medication for Allen.

Although the parties dispute what transpired next between Allen and the officers, it is undisputed that the officers ultimately placed Allen in a segregation cell in the Restorative

Housing Unit (RHU), where he was served with two disciplinary offense reports. The first report, issued by McBride, charged Allen with lying or giving false information to an employee, in violation of Offense Code 206. Pl's Trial Ex. 1. The second report, issued by Waldron, charged Allen with violating Offense Code 222, which prohibits the use of vulgar or insolent language toward an employee. Pl.'s Trial Ex. 2. That report included the following description of the offense:

> On January 27th, 2021 at approximately 07:20 AM Offender K. Allen entered the second floor vestibule of B building during pill call when Offender Allen did not have medication. When questioning the Offender about lying about having pills for pill call Offender K. Allen became agitated and vulgar towards myself and Lieutenant McBride stating "Fuck yall bitch ass supervisors."

Id.

Allen claims that Waldron falsely charged him with using vulgar language in retaliation for remaining silent when McBride angrily accused him of lying to the officers. At trial, Allen testified that he refused to respond when McBride yelled in his face and that McBride became even angrier the longer he remained silent. Allen testified that when he continued to remain silent and refuse to respond to McBride's accusations of lying, Waldron called him a racial slur and threatened to lock him up in segregation the next time he refused to answer a question. Allen testified that he remained in segregation for more than three weeks following the incident with Waldron and McBride.

Allen called Waldron as his next witness. Waldron testified that Allen became agitated when the officers approached him to find out why he claimed to be at pill call to pick up medication. While questioning Waldron, Allen showed him an incident report that he submitted shortly after issuing the disciplinary offense report that charged Allen with using

2

vulgar or insolent language. The incident report, which was dated January 27, 2021, at 8:22 a.m., included the following "narrative":

> On January 27th, 2021 at approximately 07:20 AM during Bravo one pill call inmate K. Allen entered the 2nd floor vestibule standing beside the counselors door with paperwork in his hand asking for the counselor.
>
> Lieutenant McBride asked inmate Allen if he had pills for pill call, inmate Allen replied "yes I do have pills" when inmate Allen approached the pill call window Nurse Smith notified inmate Allen that he did not have pills.
>
> Lieutenant McBride ordered inmate Allen to wait beside the counselors door until pill call was over so himself and Sergeant Waldron could speak with him.
>
> When pill call in Bravo one was concluded Lieutenant McBride and Sergeant Waldron approached inmate Allen to discuss why he lied about having pills for pill call.
>
> While questioning the inmate he became aggressive and vulgar stating 'fuck yall bitch ass supervisors <u>yall two got some bad things coming</u>."
>
> Inmate Allen was then placed in mechanical restraints and escorted to RHU by Lieutenant McBride and Sergeant Waldron and was placed on GD status charged with a 206 and 222 infraction per OP 861.1.

Pl.'s Trial Ex. 5 (emphasis added). When asked about the additional language emphasized above, which was not included in the disciplinary offense report issued by Waldron, Waldron testified that the disciplinary offense report only included the vulgar language supporting the particular charge. Allen also questioned Waldron regarding his responses to interrogatories in which he denied conferring with McBride regarding the disciplinary offense report that Waldron prepared. See Pl.'s Trial Ex. 6. Waldron acknowledged that the officers discussed who would prepare each disciplinary offense report but denied engaging in any sort of

3

conspiracy against Allen. When questioned by defense counsel, Waldron testified that it was Allen—rather than McBride—who raised his voice and that he did not recall McBride telling Allen not to lie to McBride or Allen refusing to respond to any questions.

McBride, who was called next, testified that Allen became belligerent when he attempted to find out why Allen had lied about having medication to pick up during pill call and that McBride made the decision to take Allen to segregation after Allen used vulgar and aggressive language, including the statement "Fuck y'all bitch ass supervisors." When McBride testified that he did not speak to Waldron about the disciplinary offense report that McBride issued against Allen, Allen noted that the internal incident report prepared by Waldron and approved by McBride referenced both disciplinary infractions with which Allen was charged. In response, McBride explained that the officers merely discussed who would prepare each disciplinary offense report. On cross-examination, McBride testified that it is not unusual for supervisors to discuss who will be responsible for completing paperwork and that he does not tell other staff members what to include in a report that they are tasked with preparing. He also denied threatening Allen in any manner or using racial epithets during his interactions with Allen on January 27, 2021.

Smith, a registered nurse at Keen Mountain, testified that she remembered the incident involving Allen, Waldron, and McBride that occurred after she told Allen that he had no medication to pick up during pill call. When asked if she recalled Allen making a vulgar statement, Smith responded in the affirmative and testified that he said, "Fuck y'all bitch ass supervisors," after Waldron questioned why Allen was in line for pill call. When asked about the additional language included in the internal incident report prepared by Waldron, Smith

4

testified that she did not recall Allen also saying that Waldron and McBride had "some bad things coming." Allen asked Smith about a witness statement that she submitted for the disciplinary hearing on the charge of using vulgar or insolent language. The witness statement, which Smith signed on February 3, 2021, indicated that "Inmate K. Allen stated 'Fuck yall bitch ass supervisors.'" Pl.'s Trial Ex. 3. Smith testified that she reported what she heard Allen say to the officers and that she did not speak to Waldron or McBride about the witness statement.

Hearing Officer T. Lowe was the final witness to testify at trial. Lowe presided over the disciplinary proceedings and ultimately found Allen guilty of both offenses with which he was charged on January 27, 2021. Lowe testified that no one told him what decision to make with respect to either charge.

The court's final instructions to the jury including the following instructions on the law applicable to Allen's First Amendment retaliation claim against Waldron:

> Prison walls do not form a barrier separating prison inmates from the protection of the Constitution, and prison officials may not retaliate against an inmate for exercising his First Amendment rights.
>
> In this case, Mr. Allen claims that Mr. Waldron falsely charged him with a disciplinary offense on January 27, 2021, in retaliation for engaging in conduct protected by the First Amendment.
>
> To prevail on his First Amendment retaliation claim, Mr. Allen must prove each of the following elements by a preponderance of the evidence:
>
> > FIRST:  That Mr. Allen engaged in a protected First Amendment activity;
> > SECOND: That Mr. Waldron took some action that adversely affected Mr. Allen's First Amendment rights; and

5

> THIRD: That there was a causal relationship between Mr. Allen's protected activity and Mr. Waldron's conduct.
>
> If you find that Mr. Allen has proven each of these elements by a preponderance of the evidence against Mr. Waldron, then you must find in favor of Mr. Allen.
>
> If you find that Mr. Allen has failed to prove any of these elements by a preponderance of the evidence, then you must find in favor of Mr. Waldron.
>
> With respect to the first element of Mr. Allen's retaliation claim, I instruct you that the First Amendment protects the freedom of speech. Freedom of speech includes both the right to speak freely and the right to refrain from speaking at all. Although prison walls do not form a barrier separating prison inmates from the protections of the Constitution, certain privileges and rights must necessarily be limited in the prison context in order to ensure prison and prisoner safety and security. A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system. Legitimate penological objectives include preserving internal order and discipline, maintaining institutional security, and rehabilitating prisoners.
>
> For these reasons, prison inmates do not have a protected First Amendment right to use vulgar, insulting, or threatening language toward a correctional officer in violation of prison rules. However, inmates generally retain a First Amendment right to refuse or decline to speak, provided that doing so is not inconsistent with legitimate penological interests.

Jury Instructions, ECF No. 141 at 14–15.

Following deliberations, the jury returned a verdict in favor of Waldron. The jury found that Allen failed to prove by a preponderance of the evidence that Waldron retaliated against him in violation of the First Amendment. Jury Verdict, ECF No. 142.

Allen has moved for a new trial under Federal Rule of Civil Procedure 59(a). Allen argues that the jury's verdict was against the weight of the evidence and that no reasonable

6

jury could have found in Waldron's favor in light of the "inconsistencies" and "illogical assertions" that Allen believes were pointed out at trial. Pl.'s Mem. Supp. Mot. New Trial, ECF No. 144-1, at 2.

## II. Discussion

Under Rule 59(a), a court may set aside a jury's verdict and order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Because 'every litigant is entitled to one fair trial, not two,' the decision of whether to grant or deny a motion for a new trial lies within the discretion of the district court." Wallace v. Poulos, 861 F. Supp. 2d 587, 599 (D. Md. 2012) (internal citation omitted) (quoting Glassman Constr. Co. v. United States ex rel. Clark-Fontana Paint Co., 421 F.2d 212, 215 (4th Cir. 1970)); see also King v. McMillan, 594 F.3d 301, 314–315 (4th Cir. 2010). When considering a motion for a new trial, a district court "may weigh the evidence and consider the credibility of witnesses." King, 594 F.3d at 314. The court must set aside the verdict and grant a new trial "if (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal-Mart Stores, 144 F.3d 294, 301 (4th Cir. 1998) (internal quotation marks omitted).

Here, the evidence adduced at trial was more than sufficient to support the jury's verdict. While Allen ably questioned the other witnesses and attempted to discredit their testimony, the jury clearly chose to believe the other witnesses rather than Allen. Based on the testimony of the other witnesses and the documentary evidence, the jury could have reasonably found that Allen used vulgar language toward Waldron and McBride—specifically,

7

the statement "Fuck y'all bitch ass supervisors"—rather than simply remaining silent after being accused of lying to the officers. Such insubordinate conduct on the part of an inmate in violation of prison disciplinary rules is not protected by the First Amendment. See Kervin v. Barnes, 787 F.3d 833, 835 (7th Cir. 2015) (emphasizing that "backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected"); Huff v. Mahon, 312 F. App'x 530, 532 (4th Cir. 2009) (affirming the district court's decision that "[a]n inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline . . . clearly necessitate the prohibition of such comments"). Consequently, the jury's verdict was not against the clear weight of the evidence, and upholding the verdict will not result in a miscarriage of justice.

### III.   Conclusion

For the reasons stated, Allen's motion for a new trial, ECF No. 144, is **DENIED**. An appropriate order will be entered.

Entered: December 18, 2025

Michael F. Urbanski
U.S. District Judge
2025.12.18
14:53:18 -05'00'

Michael F. Urbanski
Senior United States District Judge

8